GOODMAN *v.* DETROIT UNITED RAILWAY.

STREET RAILWAYS—NEGLIGENCE — CONTRIBUTORY NEGLIGENCE— DIRECTED VERDICT.

In an action for the death of plaintiff's decedent, who was struck and injured by defendant's east-bound street car after alighting from and passing around the front of a west-bound car, where it appears that the physical facts were such that it would have been impossible for the motorman, no matter how malicious, careless, or incompetent he was, to have run down decedent if he had exercised due care in stepping upon the track, the trial judge properly directed a verdict for defendant.

Error to Wayne; Collingwood (Charles B.), J., presiding. Submitted October 10, 1919. (Docket No. 28.) Decided December 22, 1919.

Case by David Goodman, administrator of the estate of Aaron Ostrow, deceased, against the Detroit United Railway for the alleged negligent killing of

On the question of contributory negligence of street car passenger who, upon alighting, passes around car and is struck by car on another track and is injured, see notes in 4 L. R. A. (N. S.) 729, and 21 L. R. A. (N. S.) 887.

plaintiff's decedent. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Harry Cohen* and *Washington I. Robinson,* for appellant.

*Corliss, Leete & Moody* (*A. B. Hall,* of counsel), for appellee.

BROOKE, J. Plaintiff as administrator brought suit against defendant to recover damages growing out of the alleged negligent killing of plaintiff's decedent by defendant. The accident occurred between two and three o'clock in the afternoon near the intersection of Michigan avenue and Fifth street in the city of Detroit. It is undisputed that plaintiff's decedent was struck by an east-bound car at a point a few feet east of the east curb line of Fifth street. It appears that the left-hand front portion of the car came in contact with plaintiff's decedent, knocked him down, and that the rear trucks passed over his legs, so mutilating them that amputation of both was necessary.

Plaintiff's first witness, one Hickens, testified:

"I was standing on the *southeast corner* of Fifth and Michigan. I just saw him as the car hit him. It was about half-past two or three o'clock, between that half hour. He seemed to be coming right toward me. * * * He was east of the sidewalk possibly six or eight feet, towards the city, the walk that runs north and south on Fifth street. He was struck on the north side of the east-bound track the car was on. I just happened to turn around just as the car hit him. I seen him and the car both about the same time. * * * The car went possibly 18 to 20 feet after it ran over him. The rear of the car was about 20 feet from him."

On cross-examination:

"The front of the car was running into him, the vestibule. It was the north side of the vestibule that struck him. I couldn't tell whether it was the fender,

or what, that hit him. I couldn't see it only that long (snapping fingers). * * * I saw them both at the same time, just happened to turn around at that moment. He was not scissored in between these cars, the west-bound car had passed and gone. I am sure of that."

Plaintiff's next witness, McDonald, was located on the *northwest* corner of Fifth and Michigan. This witness testified that he saw plaintiff's decedent get off the front end of a west-bound car which stopped on the east side of Fifth street. He later testified:

"The car stopped on the corner to let him off. The front end of the car was about in the middle of Fifth street. The fender came at the time he got off the car, I should judge, about three or four feet in the middle of the street. * * * I don't know where he went to after he got off; I didn't notice which way he went. I saw the car hit him. I saw him get down from the car he had been riding upon. Before he was hit when he got down, he was going across the street. * * * I saw him just before he was struck. The east-bound car running on the south side of the street, struck him. * * * On the side of the track going toward the river he was struck on, the south track, in pretty near the middle of the track I should judge. I just saw him get off the car. Didn't pay much attention. * * * I saw the car that run over him before it struck him. It had been standing to avoid the other business, you know, the other trucks. It had been standing on the west side. I don't know how long it had been standing there. When he got off from the car, that is, from the west-bound car, the east-bound car was then on the east (west) side of the street. * * * After the car ran over him it ran about 50 feet, 60 feet, somewhere around there. * * * When the east-bound car ran over him, the west-bound car was right there at the restaurant, the restaurant is located on the east side of the street, Fifth, right on the corner on the east side. The car, the one he got off, had stopped. After he got off the car went away. After he got off the car he passed around in front of it and over toward the other car; I saw that car he

got off move on toward the west; it might have went 50 or 60 feet before he was struck. It stopped again, I would say 50 or 60 feet, that would be across the street. * * * I don't know which of the cars started up first. Both cars stopped at the same time, one on the east side and one on the west side. I did not notice the cars as they started up, I didn't pay much attention to them after that."

Plaintiff's third witness to the accident, one Crane, at the time of the accident was on the north side of Michigan avenue, about 100 feet west of Fifth street. He testified:

"I couldn't see whether Mr. Ostrow got off the car there. He was standing close to the front door of the street car going west on Michigan avenue. The car stopped at the time that I say I saw him near the door on the east side of Fifth street, on Michigan avenue. As near as I could see from where I was sitting, the car stopped maybe ten or twelve feet or maybe fifteen from the curb line, that is, the curb line of Fifth street. I mean the vestibule. I did not see him get off the car, that I remember. When I saw him, I noticed a small package, just a small package; I think he had it in his hand, kind of up this way (indicating). I was paying no attention much. I saw him start to walk away from the car. He was going south then on Michigan avenue in *front of the car.* I saw him then pass in front of the car. I did not notice him after he passed the front of the west-bound car until I went to help pick him up.

"Q. Now, then, when he passed the front end of the west-bound car, whether or not you saw that car after that, the west-bound car?

"A. It was going on its route, going west.

"Q. It started then after he went over?

"A. Yes, sir. I didn't notice the east-bound car. The east-bound car would be diagonal across south on Michigan avenue when he was standing at the door of the west-bound car, within four or five feet from the curb-crossing line. Nothing in particular called my special attention to the east-bound car, but I noticed it. I saw the east-bound car start up. I didn't notice exactly where Mr. Ostrow was at the time when

it started up. I did not see the east-bound car strike him; I couldn't on account of the other car, from where I was sitting, I couldn't see him.

"*Q.* Where did you last see him, Mr. Ostrow, before the east-bound car struck him?

"*A.* Oh, around the other—just around—oh, around the side of the car—the west-bound car.

"*Q.* That is, had he passed the west-bound car?

"*A.* Yes, sir, he was.

"*Q.* Then he was over in the devil's strip then?

"*A.* The south track.

"*Q.* When you last saw him, he was over in the south track?

"*A.* I didn't take notice whether he was right in the track or in that vacant stretch there. I mean the strip between the two tracks. The west-bound car was between me and Mr. Ostrow, and that obstructed my view. I saw the east-bound car roll him after it hit him; I didn't see it strike him. I didn't pay any attention whether the west-bound car passed me when I saw him rolling. I started running right to Mr. Ostrow where he got hit. He fell on the north side of the east-bound track, and the wheels ran over him right above the shoe tops of his feet. Then it rolled him. I noticed that it rolled him ten or twelve feet. I noticed the east-bound car stop, but I didn't measure the distance; approximately 18 or 20 feet or maybe 30, for all I know, from where I was."

On cross-examination:

"There was nothing that I know between the east-bound car and Mr. Ostrow. It was a bright afternoon between two and three o'clock. The west-bound car then obstructed my view. The west-bound car couldn't start until he got out of its way. He would be over the north car tracks on Michigan avenue. I do not know what the overhang is of those cars. I do not know there is two feet overhang. In order for that car to proceed, he had to be beyond that overhang, so that would carry him into the devil's strip at least the width of that overhang. The west-bound car started first. The east-bound car didn't stand hardly a second or two still, when the west-bound car commenced moving. I suppose whatever time it stood

it stood there while this car was moving. The west-bound car couldn't move until Mr. Ostrow got in the devil's strip or else it would have run over him. So he was in the devil's strip and the east-bound car was still standing. The west-bound car proceeded and I lost sight of him. The front and rear trucks went over him. I didn't see which part of the car hit him."

On redirect-examination:

"Q. The east-bound car was standing still when he passed the west-bound car, Mr. Crane?
"A. Yes, sir.
"Q. And he had to get out of the way of the west-bound car?
"A. Yes, sir."

And on recross-examination:

"This man was not scissored; if he was scissored, he wouldn't have rolled along the street. The west-bound car had gone on."

The foregoing constitutes all of plaintiff's testimony bearing upon the conduct of plaintiff's decedent up to the moment of the accident. The testimony of the witness Hickens has no bearing upon the question involved as he did not see plaintiff's decedent until the very moment he was struck by the car. The evidence of the witness McDonald is very confusing. He first places the west-bound car from which plaintiff's decedent alighted on the east side of Fifth street, then places the front end of said car in the middle of Fifth street, and a moment later he places the fender about three or four feet in the middle of the street. He testified that the east-bound car had been standing on the west side of Fifth street. Again, he testified that:

"When the east-bound car ran over plaintiff's decedent, the west-bound car was right there at the restaurant on the east side of Fifth street."

Later his testimony is that after plaintiff's dece-

dent walked around in front of the car the west-bound car started forward, going 50 or 60 feet, and stopped. It is somewhat difficult from a perusal of this witness' testimony to get an intelligent understanding of the position of the two cars at the time that plaintiff's decedent alighted from the west-bound car, walked around in front of it and attempted to cross the street. From the evidence of the witness Crane, however, it would seem clear, that at the time the plaintiff's decedent stepped off the front end of the west-bound car, passed in front of it and attempted to cross the street, the east-bound car had stopped on the west side of Fifth street, upwards of 50 feet away; that immediately thereafter, the west-bound car started up. To have done so without colliding with plaintiff's decedent it is plain he must have been at least as far south as the middle of the strip between the two tracks. This strip is about 5 feet wide. One-half of that distance, 2½ feet, plus the width of the south track 4 feet 8½ inches, plus 1½ feet, the overhang of the east-bound car, constitutes a total distance of 8 feet and 8 inches which plaintiff's decedent had to travel to a place of safety. Assuming as contended by plaintiff's counsel that after the passage of the west-bound car plaintiff could not step back on the west-bound track by reason of the oncoming vehicular traffic, there yet remains no explanation in the testimony offered on behalf of plaintiff why decedent did not take three or four steps to the south which would have placed him beyond reach of the east-bound car. Considering this situation upon a motion for a directed verdict the learned circuit judge said:

"Now, gentlemen, if I were to charge you to find a verdict in this case, I would have to charge you that the motorman started that car fifty feet away and wilfully and maliciously ran this man down when he himself with three or four steps could have placed himself in a position of safety. *  *  *

"Now, gentlemen, I am not going to leave you to guess on this matter, because you cannot guess, and I am going to take the position that the physical facts testified to by the witnesses for the plaintiff are such that it would have been impossible for the motorman, no matter how malicious he was or how careless he was or how incompetent he was, to have run this man down if the man had exercised due care in stepping on the track"

—and directed a verdict for the defendant. As all error is assigned, or, in effect, based upon the alleged erroneous conclusion of the trial judge in directing a verdict, it is, we think, sufficient to say that, assuming the truth of the evidence introduced on behalf of the plaintiff and giving to such evidence its greatest probative force, the course taken by the trial judge was proper.

The judgment is affirmed.

BIRD, C. J., and SHARPE, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.